**VALENTI LAW APC**
Matthew D. Valenti (SBN 253978)
E-mail: mattvalenti@valentilawapc.com
5252 Balboa Avenue, Suite 700
San Diego, California 92117
Phone: (619) 540-2189

Attorney for Stewart Thompson

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWART THOMPSON, | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT FOR: |
| SPECTRUM GATEWAY HOTELS, LLC; and DOES 1-10, | DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, (42 U.S.C. §12101, *et seq.*) AND THE UNRUH CIVIL RIGHTS ACT, (CALIFORNIA CIVIL CODE §51, *et seq.*) |
| Defendants. | DEMAND FOR JURY TRIAL |

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

*"It is the policy of this state to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* California Government Code §19230(a).

Plaintiff STEWART THOMPSON (hereinafter referred to as "Plaintiff") complains of SPECTRUM GATEWAY HOTELS, LLC; and DOES 1-10, (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

## I.    PARTIES

1.    Plaintiff STEWART THOMPSON is a California resident and a qualified physically disabled person. He has paralysis and uses a wheelchair for mobility. Plaintiff prides himself on his independence and on empowering other disabled persons to be independent.

2.    Defendants SPECTRUM GATEWAY HOTELS, LLC, and DOES 1-10 are and were the owners, operators, lessors and/or lessees of the subject business, property, and facility at all times relevant in this Complaint.

3.    Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

4.    Defendants own and owned the property located at 7905 Irvine Center Dr. Irvine, CA 92618 ("Subject Property") at all relevant times.

5.    Defendants operate and operated a hotel restaurant doing business as HIVE AND HONEY ROOFTOP BAR AND KITCHEN ("hotel restaurant"), located at the Subject Property, at all relevant times.

6.    Plaintiff alleges that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## II.    JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq*.

8.    Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising out of the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which expressly incorporates the Americans with Disabilities Act.

9.    Venue is proper in this court pursuant to 28 U.S.C. U.S.C. §1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

## III.    FACTS

10.    Plaintiff uses a wheelchair for mobility.

11.    Defendants' business is open to the public, a place of public accommodation, and a business establishment.

12.    Plaintiff has been to the hotel restaurant about a half a dozen times in the last five years. Most recently, he went there with friends on January 4, 2025, and purchased a meal and drinks. The receipt he received for his purchase is shown

in the photo below.



13.    Unfortunately, during Plaintiff's visits, Defendants did not offer persons with disabilities equivalent facilities, privileges, advantages, and accommodations offered to other persons.

14.    Plaintiff encountered barriers that interfered with and denied Plaintiff the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Subject Property.

15.    These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2022 CBC").

16.    The hotel restaurant has several bars available for customers. Some are available upon reservation only, and some are available without a reservation. On the January 4, 2025 visit, Plaintiff was without a reservation. Customers without a reservation are required to use the main bar and are not given a server at their table.

17.    Plaintiff approached the main bar and could not see above the counter. He was unable to order a drink for himself at this bar. He spoke with the hostess several times asking for an accommodation so that he could order independently. He was told he would have to have a member of his party order for him. Plaintiff was uncomfortable and embarrassed to have to ask his friends to order his drink;

he wanted to order for himself. He then asked the hostess if they could assign a server to his table and order independently that way. Again, he was told no.

18.    Plaintiff then asked to speak with a manager who told him there were no lowered tables in the lounge. He also said there was no other service than the bar available. Later the manager brought out a lowered table from some other location to Plaintiff. This required the manager to remove other tables and chairs next to Plaintiff and his friends in order to make room. The manager assigned a bus boy to act as a server for Plaintiff when it was less busy so he could order independently.

19.    While Plaintiff appreciated these belated accommodations, he was embarrassed to have friends and strangers watch the staff moving furniture on his behalf. Removing a table also meant that one less party could be seated because of Plaintiff. He felt as if he were an inconvenience and a burden to others.

20.    What should have been a fun, relaxing evening with friends became a humiliating and exhausting experience, as Plaintiff endured these barriers to his equal enjoyment of the hotel restaurant, in addition to numerous others described below.

21.    The hotel restaurant's website provides no information about its accessibility features, if there are any. See screenshot below.

# IV.    ACCESSIBILITY VIOLATIONS.

22.    Parking for patrons visiting the Subject Property is among the facilities, privileges, advantages, and accommodations offered by Defendants.

23.    According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

24.    When parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. Where more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2022 CBC 11B-502 et seq; 2022 CBC 11B-208.2.

25.    However, there is no accessible parking for disabled persons at the Subject Property because there are insufficient accessible parking spaces designated for disabled persons and/or the existing ostensibly designated space or spaces are significantly noncompliant with the applicable ADA and CBC standards.

26.    There is valet parking and self-parking available at the hotel. The valet parking has no disabled parking or marked passenger drop off zone available.

27.    When valet parking is provided, there must be at least one accessible parking space designated and marked for disabled persons. 2010 ADA §502 et seq.; 2010 ADA §208.2; 2022 CBC 11B-502 et seq; 2022 CBC 11B-208.2.

28.     When valet parking is provided, there must be at least one passenger loading zone designated and marked for disabled persons. 2010 ADA §209.2; 2010 ADA §503; 2022 CBC 11B-208.1; 2022 CBC 11B-209.4.

29.     Currently there are routes throughout the hotel restaurant measuring 17 inches, 18 inches, 24 inches, 30 inches, 31 inches, and 32 inches wide. Accessible routes must have a minimum width of 36 inches.  2010 ADA §403.5.1; 2022 CBC 11-B 403.5.1

30.     None of the tables in the available rooftop dining areas are accessible to a person in a wheelchair. Where dining surfaces are provided for the consumption of food and drink, at least 5% of those must be accessible. It is not sufficient that there be an accessible table in one seating area if other separate seating areas do not have an accessible table; such a scenario essentially relegates disabled patrons to a segregated area. There are minimum and maximum height requirements for an accessible dining table, as well as minimum dimensions for the clearance underneath so that the legs and toes of a person in a wheelchair can fit under the table. 2010 ADA §226.1; 2010 ADA §306.2.3; 2010 ADA §902; 2022 CBC 11B-226.1; 2022 CBC 11B-306.2.3; 2022 CBC 11B-902.

31.     The rooftop has many different dining areas and types of tables available to customers. The high tables have a base depth of 8 inches, a base pole depth of 16 inches, and a clear width of 0 inches. Base depth is required to be 17-25 inches while base pole depth is required to be 17-25 inches. The required clear width underneath an accessible table is 30 inches. 2010 ADA §306.2.2; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2022 CBC 11B- 306.2.2; CBC 11B- 306.2.3; 2022 CBC 11B- 306.2.5.

32.     The high table's height measured from the bottom of the table's surface to the finish floor at 39 inches. Accessible tables are required to measure 27 inches minimum, from the bottom of the surface to the finish floor, however, this measurement of 39 inches is above the height allowed for the top of the table's

surface. The high table's height measured from the top of the table's surface to the finish floor at 41.5 inches. Accessible tables are required to measure no more than 34 inches from the top of the table's surface to the finish floor is required to be 34 inches maximum. 2010 ADA §306.3.1; 2010 ADA §902.3; 2022 CBC 11B- 902.3.

33.     The small high tables have a base depth of 6 inches and a clear width of 0 inches. Base depth of an accessible table is required to be 17-25 inches and the required clear width underneath is 30 inches. 2010 ADA §306.2.2; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2022 CBC 11B- 306.2.2; CBC 11B- 306.2.3; 2022 CBC 11B- 306.2.5.

34.     The small high table's height measured from the bottom of the table's surface to the finish floor at 38 inches. Accessible tables are required to measure 27 inches minimum, from the bottom of the surface to the finish floor, however, this measurement of 38 inches is above the height allowed for the top of the table's surface. The small high table's height measured from the top of the table's surface to the finish floor at 42.5 inches. Accessible tables are required to measure no more than 34 inches from the top of the table's surface to the finish floor is required to be 34 inches maximum. 2010 ADA §306.3.1; 2010 ADA §902.3; 2022 CBC 11B- 902.3.

35.     The long high table's height measured from the bottom of the table's surface to the finish floor at 39 inches. Accessible tables are required to measure 27 inches minimum, from the bottom of the surface to the finish floor, however, this measurement of 39 inches is above the height allowed for the top of the table's surface. The long high table's height measured from the top of the table's surface to the finish floor at 42 inches. Accessible tables are required to measure no more than 34 inches from the top of the table's surface to the finish floor is required to be 34 inches maximum. 2010 ADA §306.3.1; 2010 ADA §902.3; 2022 CBC 11B- 902.3.

36.    The coffee table's height measured from the top of the table's surface to the finish floor at 16 inches. Accessible tables are required to measure between 28 inches and 34 inches from the top of the table's surface to the finish floor. 2010 ADA §902.3; 2022 CBC 11B- 902.3.

37.    The main bar is available for customers who do not have a reservation. The hotel restaurant does not have a lowered portion of the bar's main counter. The base depth of the main bar is 0 inches. Base depth is required to be 17-25 inches.  2010 ADA §306.2.2; 2010 ADA §306.2.3; 2010 ADA §306.2.5; 2022 CBC 11B- 306.2.2; CBC 11B- 306.2.3; 2022 CBC 11B- 306.2.5 2022 CBC 11B-226.3; 2022 CBC 11B-902.3

38.    The main bar's height measured from the bottom of the bar's surface to the finish floor at 39.5 inches. Accessible tables are required to measure 27 inches minimum, from the bottom of the surface to the finish floor, however, this measurement of 39.5 inches is above the height allowed for the top of the table's surface. The main bar's height measured from the top of the table's surface to the finish floor at 42.5 inches. Accessible tables are required to measure no more than 34 inches from the top of the table's surface to the finish floor is required to be 34 inches maximum. 2010 ADA §306.3.1; 2010 ADA §902.3; 2022 CBC 11B- 902.3

39.    There is another bar which is located in the back area of the roof top dining area available for use with a reservation only. This bar does have a lowered portion of the bar but is segregated from the rest of the dining area and is often closed.

40.    The photos below show some of these violations.

/ /

/ /

/ /

/ /







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









41.     These inaccessible conditions and barriers denied Plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment. Because of the lack of compliant routes throughout the hotel restaurant, he was blocked from wheeling through the circulation path as other patrons could. He had more difficulty getting to his seating area and moving through the hotel restaurant. Because of the lack of compliant seating, Plaintiff was in the way of the path of travel to service areas, did not feel properly seated at a table as other patrons would, could not comfortably reach his meal, and risked dropping or spilling food onto his lap as he ate. Because of the lack of compliant bar, Plaintiff was forced to either suffer the embarrassment of having his friends order his drinks for him, or interrupt everyone's meal several times to ask for accommodations, speak to management, and have tables moved.

42.    The barriers existed during Plaintiff's visit to the Subject Property. Plaintiff personally encountered these barriers.

43.    These barriers denied Plaintiff full and equal access due to his disability because, *inter alia*, they caused Plaintiff anxiety, difficulty, discomfort, and embarrassment which patrons who do not use a wheelchair for mobility do not suffer when they access the Subject Property.

44.    Plaintiff has Article III standing because he visited the subject property to purchase a meal and drinks. The Subject Property is conveniently located and in the general area where he lives, shops, goes to medical appointments, visits family and friends, recreates, and does other normal activities in his daily life. Therefore, in addition to his concrete plan to return to the Subject Property to test for ADA and CBC compliance, Plaintiff also intends to return to the Subject Property in the near future to enjoy another meal, after the accessibility barriers alleged herein have been removed.

45.    Plaintiff alleges that Defendants knew that the barriers prevented equal access. Plaintiff further alleges that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

46.    Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

47.    The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2022 CBC 11B-108 as follows:

Features for accessibility must be permanently functional, unobstructed and may not be removed.  It is not sufficient to provide features such as accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

48.    Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

49.    To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiff of important civil rights.

50.    On information and belief, Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

51.    The barriers to access are listed above without prejudice to Plaintiff citing additional barriers to equal access by an amended complaint after inspection by Plaintiff's Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, are barriers Plaintiff may encounter when he returns to the premises. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

## FIRST CAUSE OF ACTION

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq.*)

(Against All Defendants)

52.     Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

53.     More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a).

54.     In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

55.     In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

56.    As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

57.    The specific prohibitions against discrimination include, *inter alia*, the following:

- 42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

- 42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

- 42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

- 42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

- 42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

58.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

59.    The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

60.    The removal of each of the physical and policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA.  Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

61.     On information and belief, as of the date of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

62.     Defendants' actions continue to deny Plaintiff's rights to full and equal access and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

63.     Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

## SECOND CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq.*)

(Against All Defendants)

64.     Plaintiff alleges and incorporates by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

65.     California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

66.    California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

67.    California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

68.    California Civil Code §52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

69.    Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

70.    Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52.  Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

71.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

72.    The discriminatory denial of equal access to and use of the described public facilities caused Plaintiff difficulty, discomfort, and embarrassment.

73.    As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiff, according to proof.

## PRAYER FOR RELIEF

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1.    Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Subject Property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA §12188(a) and state law directing Defendants to provide facilities and services usable

by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies; and to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs;

2.      Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur;

3.      Award to Plaintiff all appropriate damages, including but not limited to actual and statutory damages according to proof;

4.      Award to Plaintiff all reasonable attorney fees, litigation expenses, and costs of this proceeding pursuant to 42 U.S.C §12205 and California Civil Code §52; and

5.      Grant such other and further relief as this Court may deem just and proper.


DATED: May 31, 2025                         **VALENTI LAW APC**


                                   By:   */s/ Matthew D. Valenti*
                                         Matthew D. Valenti
                                         Attorney for Plaintiff
                                         Stewart Thompson

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims and issues for which a jury is permitted.


DATED: May 31, 2025                                **VALENTI LAW APC**


                                        By:    */s/ Matthew D. Valenti*
                                               Matthew D. Valenti
                                               Attorney for Plaintiff
                                               Stewart Thompson